IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CHARLES R. HALL, JR., JOHN O'NEILL, JR., TIMOTHY L. PHILLIPS, CHARLIE R. WOOTEN, WILLIAM T. BOLIN, JEFFREY S. BOSTON, GARY G. BOWLIN, II, RANDELL T. BURCHAM, JOSEPH D. BURKE, JR., MAURICE BURRIS, RICKY L. CARPENTER, ALVIN R. CARVER, JR., CLYDE M. CHILDERS, TIMOLYN A. CLARK, EARL E. CURRY, III, DARRELL E. DELLINGER, CHARLES E. DILLING, TOMMY A. FAULKENBURY, BEN FEWELL, JOHN H. HALL, JR., BRODY L. HARKEY, DEANIE F. HARKEY, DOUGLAS W. HOLT, WILLIAM D. HOVIS, BERWYN L. JOHNSON, TERRELL JOHNSON, KEVIN D. JONES, KELLY J. KOWALCZYK, ARCHIE LANEY, MARCUS LEECH, TODD LLOYD, DONNIE LOCKLEAR, JOHN A. MCCOIG, JOHN MOORE, RONALD A. MUSE, DAVID NEAL, JOHN E. NORMAN, CARL PRIVETTE, JOHN D. ROBERTS, ANTHONY J. RYALL, STEVEN J. STAMPER, SAMUEL J. STEPHENS, JR., JEFF THRIFT, DANIEL L. USERY, RICHARD A. WHITENER, AND DAVID W. WILLIAMS, JR. EACH INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>  PLAINTIFFS,<br>V.<br><br>INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW; AND UAW LOCAL UNION 5285,<br><br>  DEFENDANTS. | Civil Action No. 3:10-cv-418-DSC<br><br><br><br><br><br>**MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on "Defendants' Motion for Summary Judgment," Doc. 90, filed on April 15, 2013 and its associated brief and exhibits, Doc. 91. On May 2, 2013, Plaintiffs filed "Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment," Doc. 94, and its associated exhibits, Docs. 95 and 96. On May 13, 2013, Defendants filed "Defendants' Reply in Support of of Their Motion for Summary Judgment," Doc. 98.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this Motion is now ripe for the Court's consideration.

After fully considering the arguments, the record, and the applicable authority, the Court **GRANTS** Defendant's Motion for Summary Judgment, as discussed in detail below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of the collective bargaining relationship between Daimler Trucks North America LLC, formerly known as Freightliner LLC (the "Company") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW and UAW Local Union 5285 (collectively, "the UAW" or "the Union") at the Company's truck production plant in Mt. Holly, North Carolina.

In 2006, the UAW and the Company executed a collective bargaining agreement (the "2006 CBA") for the Mt. Holly plant covering the period from August 26, 2006 to April 2, 2010. As stated in the 2006 CBA, the UAW is the exclusive representative for Production and Maintenance employees at the Mt. Holly plant. The 2006 CBA contained a Letter of Understanding on Job Security, known as the "70/30 provision." In relevant part, the Letter provided that the Company could not lay off employees at Mt. Holly unless the plant was producing at least 70% of its M-2 trucks sold in the United States and Canada. The Company also produces M-2 trucks at a plant in Santiago, Mexico.

In January 2009, the Company announced its intention to idle or close the Mt. Holly plant. At that time, the Company was producing less than 70% of its North American trucks at the Mt. Holly plant. The UAW instituted a class action grievance ("the 70/30 grievance") on behalf of all adversely affected employees. The UAW demanded that the Company cease violating the terms of the 2006 CBA; that the employees be returned to their jobs; and that the employees be made whole for the loss of their compensation and benefits, as well as for other consequential losses. The arbitration was held before Robert B. Moberly, Dean of the University of Arkansas School of Law.

On January 21, 2010, the Arbitrator ruled in favor of the UAW and ordered that the Company "make whole" certain bargaining unit employees affected by the contract violations. The Arbitrator expressly directed the question of "employee losses" to the Company and the UAW for further "consideration and determination", and retained jurisdiction "to determine any disputes over the interpretation or application of this award, including the extent of employee losses." Doc. 91, Ex. 4, p. 14.

Tim Bressler, then Assistant Director of the UAW's Heavy Truck and Engine Department, was initially the lead negotiator for the Union in determining the remedy for 70/30 grievance. Bressler discussed the award with David Carson, the General Manager for Human Resources at the Company. He asked Carson to supply the Union with information to use in calculating the make whole remedy ordered by the Arbitrator. Carson did so on March 5, 2010. Bressler asked his Local Representatives to provide him with an estimate of the average number of man hours needed to produce an M-2 truck. They estimated that it took about 100 hours of labor to produce a M-2 truck at Mt. Holly.

Based upon information from the Company and Local 5285, Bressler and Brad Markell at the UAW Research Department drafted a letter to the Company with the UAW's initial proposal for a make whole remedy under the arbitration award.

The UAW's initial proposal calculated the number of "trucks owed" at approximately 7,427. This represented the number of additional trucks that would have been built at the plant if the Company had complied with the 70/30 provision. This figure did not include any "trucks owed" after February 2010, which meant that the Company's liability was still increasing at the time the letter was written. The UAW assumed that employees worked approximately 145.33 hours per month. The information provided by the Company reflected that employees worked an average of 1,744 hours per year. The number of hours per month was calculated by dividing 1,744 by twelve.

The data provided by the Company also included the cost of paid leave such as vacations, holidays, and sick days. The cost of this paid leave was 21.5% of the base hourly wage rate.

Based upon this information, the UAW calculated "gross damages" on a monthly basis by multiplying the number of "trucks owed" times the number of hours needed to produce each truck. They then divided the hours by 145.33 to determine the number of employees needed to make the additional trucks. They increased that headcount by 21.5% to account for paid time off. The Union calculated the back pay due per month by assuming that each employee worked 145 hours and was paid $37.05 per hour. This total wage rate for the employees' back pay included hourly wages, paid time off, shift premiums, overtime premiums, company 401(k) match, and the Company life insurance contributions.

The UAW's proposal demanded that the Company pay Social Security and Medicare taxes on the back pay, and that it repay unemployment benefits received by employees in

4

accordance with state law. The Union also proposed that the Company reimburse employees who bought COBRA health insurance as well as those who paid medical bills that would have been paid by Company insurance. Finally, the Union demanded that the Company restore pension and post-retirement health credits that employees would have earned.

The UAW did not demand interest on the back pay because that is not commonly part of a make whole award in labor arbitrations. They did not seek compensation for damages that employees suffered to their personal finances (e.g. the loss of cars, homes or credit) because such damages would have been difficult to ascertain, and are not commonly awarded in labor arbitrations.

On March 12, 2010, Bressler sent the letter to the Company detailing an amount of $33.4 million owed to the employees through February 2010. The Union understood that the $33.4 million figure was an opening demand, with all of the assumptions weighing in favor of a larger amount owed to the bargaining unit employees. The Union anticipated that the Company would contest those assumptions and then the parties would negotiate an agreement. The Union did not want to return to the Arbitrator if it could reach a fair settlement out of fear that the Arbitrator might narrow the scope of the remedy. In this industry, a truck is not produced until it has been purchased by the customer. The Company decides whether to make a sale based in large part upon the cost of manufacturing the truck. At the arbitration hearing, the Company argued that it would not have sold the additional trucks if it had to produce them at Mt. Holly because of the higher labor costs there.

On April 29, 2010, Carson proposed a "production model" to re-create the truck production that would have occurred at Mt. Holly if the Company had adhered to the 70/30 provision. This model assumed that it would take approximately 92 man-hours to build a truck.

It also contained a 14.3% adjustment for paid time off. Finally instead of determining headcount and damages on a monthly basis, it proposed to "smooth out" monthly fluctuations by assuming two different daily build rates for trucks: 44 trucks per day in high production months and 33 trucks per day in low production months. After UAW officials reviewed the Company's proposed production model, the parties arranged a face-to-face meeting to discuss the remedy on June 3 and 4, 2010.

Bressler was promoted at the beginning of June 2010. Newly appointed UAW Administrative Assistant Willard Beck assumed the lead for the Union negotiating team. Ricky McDowell, President of UAW Local 5285, was not involved in any of the negotiations. He kept the Local 5285 members informed of the negotiations based upon information he received from the International Union.

There were several major issues at the June meetings. First, the Company proposed paying a lump sum as the remedy, leaving it to the UAW to devise a formula for distribution to individual employees. The UAW rejected that proposal. They believed that individual awards of back pay were necessary to protect the members' social security contributions, post-retirement health care insurance and pensions. The UAW also believed the awards had to be calculated on an individual basis to comply with state laws governing back pay and unemployment compensation. Finally, they believed that individual awards were necessary to ensure fair compensation for members who incurred large medical bills during the layoff. The UAW realized that determining individual awards would lengthen the the process but deemed it in the best interest of its members. Because the negotiating and claims process might be lengthy, the Company asked the Union to waive interest on the award. The Union agreed, in large part because labor arbitrators rarely award interest.

The parties disagreed as to the number of man hours required to build a truck. The UAW proposed 100 hours per truck while Daimler proposed 92. In June, the Company gave the Union a "Gut Check" document containing the data the Company relied upon to support its figure of 92 hours. The Union countered by proposing 95 hours. The Company expressed a willingness to consider no more than 93 hours. On the second day of meetings, the Company offered to accept 95 hours, but to calculate losses from the middle of March 2009 forward. The Union rejected that proposal.

Daimler also contended that it would have sold and produced fewer trucks if forced to adhere to the 70/30 ratio. They said it would have been unprofitable to make them at the Mt. Holly plant because of the labor costs under the contract. This would have significantly reduced the number of "trucks owed" and thus the compensation to employees. The UAW rejected Daimler's position and maintained that Daimler should be responsible for the full number of missing trucks, i.e. 70% of the trucks actually sold by Daimler in North America, regardless of the difference in labor costs.

The parties agreed on some of the elements of the production model proposed by Daimler, including: (1) that some paid time off (sick and vacation) would be accounted for in the production model; (2) that the production model properly accounted for holidays; and (3) that 5% of the hours compensated for in the production model would be considered overtime pay.

The UAW agreed that back pay awards should be offset by unemployment compensation and interim earnings received during the layoff. North Carolina law requires the repayment of benefits from back pay awards. See N.C.G.S. § 97-14(8). Labor arbitrators typically set off interim earnings in their awards. Moreover, Section 6 of Article VI of the 2006 CBA provides

that the Company is entitled to a credit in back pay awards for outside earnings and unemployment benefits.

The parties also agreed that any final settlement would be submitted to the Arbitrator for approval, to make sure they implemented the make whole remedy that the Arbitrator contemplated in his decision.

In August 2010, Beck sent a letter to Carson summarizing the status of the negotiations. Beck did not specifically address compensation for vacation and sick leave in this letter. He believed that the production model proposed by the Company included those extra hours.

After sending the August 2010 letter and making several follow-up inquiries, Beck did not receive a response from the Company. The Company would not schedule a meeting to complete the negotiations. The UAW strongly considered returning to the Arbitrator. However, Beck believed that returning to the Arbitrator was a last resort for several reasons. First, the issues, such as the details of the production model, would be very complicated and time-consuming for the Arbitrator. Second, the Company had better access to the evidence on the man-hours-per-truck issue, so it could well prevail on that issue before the Arbitrator. Third, was the concern that the Company would argue that fewer trucks would have been built at Mt. Holly because of higher labor costs. If the Arbitrator ruled against the UAW on this issue, the result could have significantly reduced the damages awarded to employees. Finally, even if the Arbitrator decided the issues, the UAW and the Company would still have to go through the claims process before any employees received their compensation.

On August 31, 2010, the Plaintiffs' original Complaint was filed containing three counts. Doc. 94, Ex. 2-4. The first count alleged a breach of the 2006 CBA by Daimler for failing to abide by the Interim Arbitration Award and for not finalizing the determination of employee

losses. The second count alleged a breach of the duty of fair representation by the UAW for not finalizing the determination of employee losses. The third count sought injunctive relief against both the Company and the UAW. Plaintiffs sought an injunction pending the resolution of this action to order the UAW not to commit further violations of its duty of fair representation and to order the Company to abide by the terms of the January 21, 2010 Arbitration Award.

On September 24, 2010 Plaintiffs' First Amended Complaint was filed adding forty-four additional Plaintiffs. (Exhibit B, Plaintiffs' Amended Complaint, (Docket No. 11).

The Company eventually agreed to continue negotiations on October 6-8, 2010. The Company and the UAW agreed to use 95 man-hours per truck in the production model and also agreed that there were 8167 trucks owed. They also agreed that the determination as to which employees were affected would be done in a "blind" manner, to ensure that no bias or favoritism affected the process. The Company would determine the number of employees in each classification that would be needed to produce the total number of trucks for each month. Then the seniority list would be used to identify the employees who would not have been laid off.

On October 13, 2010, Carson wrote to Beck confirming their agreement on the remedy issues. While the letter did not specifically address compensation for vacation and sick leave, both parties believed that they had agreed to adjust the production model to account for paid time off. Beck believed that the references to the production model in the letter incorporated that agreement.

On October 13, 2010, Defendants filed "Defendants' Joint Motion to Stay and for Extension of Time to Answer and Supporting Memorandum" (Doc. 12). Defendants asserted that in accordance with the Arbitrator's directive, the Company and the Union were engaged in continuing negotiations to resolve the issue of damages since the issuance of the Arbitration

9

Award on January 21, 2010. Defendants asserted that the ongoing negotiations proved time consuming because two different steps were required to implement the Arbitration Award. Defendants requested that the Court stay the proceedings for a period of ninety (90) days pending final resolution of the arbitration in this matter.

In response, Plaintiffs argued that Defendants had failed to pay compensation to any employee despite the fact that the Arbitration Award was issued on January 23, 2010 and that granting the Motion to Stay would enable Defendants' inaction and cause further harm to the employees who would benefit from the Arbitration Award.

During November 2010, the UAW and the Company negotiated the claims submission and review process that would be used to calculate each employee's compensation. Based on the agreed upon production model, local Company officials at Mt. Holly produced a "headcount matrix," setting forth the number of employees in each classification who were owed compensation from January 2009 through March 2010. The Company also produced rosters of the employees' seniority. Tim Bridges of the UAW International and leaders of UAW Local 5285 reviewed the information in the headcount matrix with Company officials at the plant. There was no disagreement.

On November 23, 2010, the Court granted Defendants' Joint Motion to Stay and stayed this matter until January 6, 2011.

On December 23, 2010, the Arbitrator issued a Supplemental Award based upon two agreements negotiated by the Company and Union, which had been jointly submitted in accordance with the Initial Award: (1) a "Stipulation of Employee Losses" (the "Stipulation"); and (2) a "Process for Claim Submission, Review and Payment" (the "Claims Process") (jointly referred to as the "Agreements"). The Agreements address the two steps necessary to effectuate

the Arbitrator's Initial Award. As determined by the Arbitrator, the Stipulation and Claims Process creates "a system to determine employees who will receive compensation; a process for notifying impacted employees of their entitlement to a make-whole remedy, as well as receiving, reviewing and paying claims; and a list of employees impacted each month by the Arbitrator Award." Doc. 91, Ex. 10, p. 3-4. The Arbitrator concluded that "the agreement provides a comprehensive method of making affected employees whole, as contemplated in my original Opinion and Award." Id. at 4. He further concluded that the settlement was a "proper, fair, sound and lawful method for reimbursing employees for their losses." Id.

After the Arbitrator issued his Supplemental Award, the Company generated documents to send to each affected employee specifying the number of hours in each month for which they would receive back pay. These documents did not refer to any accrued vacation and sick leave. The UAW raised this issue with the Company. The Company responded that vacation and sick leave were included in the agreed upon production model used by the parties to determine how many man-hours were required per truck. The Company pointed to the 14.3% absenteeism and vacation component contained in the "Gut Check" table to support their contention that the affected employees were adequately compensated.

During January 2011, both the Company and the Union filed Motions to Dismiss the Plaintiffs' Amended Complaint with prejudice. See Docs. 22, 23 and 24.

On April 13, 2011, the Company filed a lawsuit in this District seeking a declaratory judgment that the December 23, 2010 Arbitration Award constituted the final determination of the remedy; that the UAW was obligated to comply with the terms of that Award; and that the UAW was precluded from asserting any further claims for vacation and sick pay or accrual in connection with the payments made to employees pursuant to the Award. See Doc. 91, Ex. 11,

Daimler Trucks North America LLC v. UAW, No. 3:11-cv-178-GCM, No. 1 (W.D.N.C. April 13, 2011).

On April 14, 2011 the UAW filed a Motion with the Arbitrator raising the issue of accrued vacation and sick leave. Doc. 91, Ex. 12. On April 28, 2011, the Arbitrator issued an Order denying the Motion. Id., Ex. 13. In light of the Arbitrator's denial, and considering the delay that would ensue from protracted litigation in federal court as well as the possible merit of the Company's Complaint, the UAW decided to drop its claims for accrued vacation and sick leave. On May 15, 2011, the Company and the UAW entered into a Final Consent Judgment agreeing that the Arbitration Award was final and binding and that the UAW was precluded from asserting any claims for vacation and sick pay or accrual in connection with the payments made to the employees pursuant to the Award. Id., Ex. 14.

On May 31, 2011, the Court granted Plaintiffs' Motion to Amend their Complaint, doc. 44, which mooted Defendants' Motions to Dismiss. See Doc. 47. The Plaintiffs filed their Second Amended Complaint on June 6, 2011 which asserted only a breach of the duty of fair representation by the UAW (although, as required in a §301 action, it contained the allegation that the Company had breached the 2006 CBA as found by the Arbitrator in the January 21, 2010 Interim Arbitration Award). The UAW then filed a Motion to Dismiss the Plaintiffs' Second Amended Complaint. Doc. 49. On July 29, 2011, the undersigned issued a "Memorandum and Recommendation" recommending denying the UAW's Motion to Dismiss. On December 5, 2011, Chief District Judge Robert J. Conrad, Jr. adopted the Memorandum and Recommendation and denied the UAW's Motion to Dismiss the Plaintiffs' Second Amended Complaint. Doc. 57.

On January 20, 2012, all parties consented to jurisdiction by the undersigned U.S. Magistrate Judge. On March 29, 2013, the parties entered into a Stipulation that Plaintiffs' duty

of fair representation claims allege only arbitrary conduct, and not any discrimination or bad faith by the UAW.

On April 15, 2013, the UAW filed the instant Motion for Summary Judgment. The UAW argues that summary judgment should be granted in favor of Defendants on all of Plaintiffs' claims because they failed to exhaust their internal union remedies and because Plaintiffs cannot demonstrate that the Union's conduct was arbitrary.

## II. STANDARD OF REVIEW

Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The Rule provides procedures for establishing the presence or absence of any genuine dispute as to any material fact:

> (c) Procedures.
>
> > (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> >
> > > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > >
> > > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> >
> > (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

Although the moving party bears the initial burden of stating the basis for its motion and identifying what evidence demonstrates the absence of a genuine issue of material fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The facts must be viewed in the light most favorable to the non-moving party, and where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See Ricci v. DeStefano, 557 U.S. 557, 585 (2009) (citations omitted).

"The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Coleman v. United States, 369 F. App'x 459, 461 (4th Cir. 2010) (citing Baber v. Hosp. Corp. of Am., 977 F.2d 872, 875 (4th Cir.1992)). Instead, a party asserting that a fact cannot be or is genuinely disputed must cite to particular materials in the record, including depositions, documentary evidence, affidavits and declarations. Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

### III. DISCUSSION

Plaintiffs concede in their response that Defendants' Motion should be granted as to claims relating to the allegations that more employees should have been compensated; that unemployment benefits should not have been deducted from the employees' back pay compensation; that unpaid medical debt should have been covered by the settlement; and that interest or consequential damages should have been included in the compensation paid pursuant to the settlement. Plaintiffs also concede that Defendants' Motion should be granted as to the claims that the UAW took too long to negotiate a settlement and that inaccurate statements made to the employees by Local 5285 officials were evidence of a breach of the duty of fair representation. Consequently, the only issue remaining for the Court is whether Defendants breached their duty of fair representation by agreeing to a settlement with Daimler that omitted back pay compensation for vacation and sick time.

Defendants argue that summary judgment should be granted as to this claim because Plaintiffs failed to exhaust their internal union remedies and cannot demonstrate that the Union's conduct was arbitrary[1].

This action is brought pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Section 301 provides a remedy for breach of a collective bargaining agreement. Individual employees may assert Section 301 claims. However, a union must be given an opportunity to act on behalf of a member before he may proceed on his own. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). A cause of action will lie against an employer only if a union has breached its duty of fair representation to an employee. Vaca v. Sipes, 386 U.S. 171 (1967).

---

[1] As noted above, on March 29, 2013, the parties filed a Stipulation that the duty of fair representation claims did not allege any discrimination or bad faith by the UAW.

Employees must exhaust internal union appeals procedures established by their union's constitution before they may pursue claims in court for breach of the duty of fair representation. Clayton v. UAW, 451 U.S. 679, 692 (1981). Even if a final arbitration decision has been made, a plaintiff must also exhaust any available internal procedures which could "reactivate the grievance or award complete relief." Sewell v. International Longshoremen's Assoc., No. SKG-12-00044, 2013 WL 1316098, at *5 (D. Md. March 27, 2013)(citing Fed. Lab. Law: NLRB Prac. § 14:9.; Clayton v. UAW, 451 U.S. 679, 692 (1981)).

In Clayton v. UAW, the Supreme Court addressed the issue of when an employee's failure to exhaust his union's internal appeals procedure bars a Section 301 suit against the union or the employer. In deciding the issue, the Court declined to impose a universal exhaustion requirement, and instead left the district courts with discretion to determine when to excuse an employee's failure to exhaust his union's internal appeals procedures. Id. at 689. The Court explained that in exercising their discretion, district courts should consider the following three factors:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

Id. The Court also stated that "[w]here internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes." Id. at 692.

The Fourth Circuit has followed this exhaustion requirement. Shiflett v. I.T.O. Corp. of Baltimore, 202 F.3d 260 (Table), 2000 WL 14214, at *7-9 (4th Cir. Jan. 10, 2000); Pinchefsky v.

Communications Workers of Am., AFL-CIO, 111 F.3d 129 (Table), 1997 WL 173224, at *1 (4th Cir. April 11, 1997); Chappell v. Communications Workers of Am., AFL-CIO, 993 F.2d 1536 (Table), 1993 WL 185635, at *2-3 (4th Cir. June 1, 1993); Oliver v. Chesapeake & Potomac Tel. Co., of Virginia, 850 F.2d 689 (Table), 1988 WL 68358, at *2 (4th Cir. June 30, 1988).

Other federal circuit courts have also followed the exhaustion requirement. See, e.g., Chapman v. UAW, 670 F.3d 677 (6th Cir. 2012) (en banc); Bell v. DaimlerChrysler Corp., 547 F.3d 796 (7th Cir. 2008); Seniority Research Group v. Chrysler Motor Corp., 976 F.2d 1185 (8th Cir. 1992); Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483-84 (9th Cir. 1986); Hayes v. Bhd. of Ry. & Airline Clerks/Allied Services Div., 727 F.2d 1383 (5th Cir. 1984).

In this case, Articles 32 and 33 of the UAW Constitution set forth the Union's internal appeals procedure. Under the UAW Constitution, multiple members may file separate appeals or a single appeal seeking collective redress. Under the Constitution, each member must exhaust those appeals procedures before filing suit.

Article 33 guarantees the members the right, at a membership meeting, to challenge the actions of the Local Union or its officials in a wide range of areas, including the handling of grievances. If the membership rejects this challenge, or does not act, the member has a right to appeal to the UAW's International Executive Board ("IEB"). Alternatively, if the action challenged is that of an agent or an administrative arm of the International Union, the member may file the challenge directly with the IEB.

In many cases, an appeal to the IEB results in a hearing. At that hearing, a member has the right to be represented by counsel, to submit a brief, and to present evidence. If the member is dissatisfied with the decision of the IEB, it may be appealed to the Convention Appeals Committee ("CAC") or to the Public Review Board ("PRB"). The CAC consists of elected

Constitutional Convention delegates from each Region of the UAW. No member of Local 5285 is currently a member of the CAC. The CAC has the authority to order the Union to pay monetary damages to appellants. The PRB is a panel of six individuals, established under Article 32 of the Constitution. The panel members are all currently university or law school professors. No member of the PRB can be employed by the UAW or work under its jurisdiction. Each member must be independent of the UAW. The PRB sets its own procedural rules, controls its own budget, maintains its own office, and manages its own docket. While the President of the International Union appoints new members to fill vacancies, he must select from a list submitted by the other members of the PRB. The PRB has the authority to require the UAW, or a Local Union, to pay monetary damages, back pay, or both, to a UAW member. The UAW regularly publicizes these appeal procedures in Solidarity, its magazine sent to members.

It is undisputed that none of the Plaintiffs here have filed appeals with UAW Local 5285, the IEB, or the PRB challenging the Union's negotiation of the remedy for the 70/30 grievance or the resulting awards.

Plaintiffs assert that they were not required to exhaust their internal union remedies due to the inherent futility of any such effort. Plaintiffs argue that their original Complaint sought injunctive relief which is unavailable under the UAW appeals process, and that this case evolved from that original cause of action. Plaintiffs also argue that the UAW appeals process does not provide them with any discovery mechanism to gather evidence necessary to support their claim. Plaintiffs assert that the UAW appeals process was not a reasonable or fair system capable of affording them complete relief. The Court finds no merit in these arguments and further finds that these grounds do not fall within any of the three exceptions to the exhaustion requirement enunciated in Clayton.

Plaintiff's original Complaint did seek injunctive relief that would be unavailable under the UAW appeals process. However, the original Complaint was amended and it is the Plaintiff's Second Amended Complaint that is before the Court. It is well settled that "an amended pleading supersedes the original pleading, rendering the original pleading of no effect." Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001). The Second Amended Complaint seeks only monetary damages based on the approved settlement. It does not seek injunctive relief. The UAW appeals process can provide monetary relief. Plaintiffs could have filed internal UAW appeals related to their claims about the Settlement. They could have also requested a stay of the pending litigation while they completed the appeals process. After completing the internal appeal process, if recourse to the courts was still necessary, Plaintiffs could have then filed their Second Amended Complaint.

Plaintiffs argue that this course of action would have unreasonably delayed their opportunity to obtain the Court's adjudication on the merits of their claim and therefore, under the Clayton factors, they were not required to exhaust their internal union remedies. The Court disagrees. Plaintiffs concede that they never attempted to exhaust their internal remedies. Accordingly, they cannot complain that the internal UAW appeal processes caused any unreasonable delay.

Additionally, the time limitations contained in Article 33 of the UAW Constitution provide for reasonable time limits to ensure against any unreasonable delay. See Harrison V. UAW, 174 F.Supp.2d 551, 565 (E.D. Mich. 2001) ("many courts have found that the UAW internal procedure is governed by a series of reasonable time limits); Nanney v. Chrysler Corp., 600 F. Supp. 1248, 1253 (D. Del. 1984) ("Article 33 of the UAW Constitution appears to set forth a reasonably expeditious procedure for the adjudication of internal union appeals.");

19

Monroe v. UAW, 540 F.Supp. 249, 258 (S.D.Ohio 1982), aff'd, 723 F.2d 22 (6th Cir.1983) (procedures under Article 33 of UAW constitution "have been hailed by other Courts, and commentators, as being virtually unique in the American labor movement, in providing fair and rapid disposition of internal union appeals").

Plaintiffs also contend that the internal union procedures do not afford members any of the basic tools of discovery provided by the Federal Rules of Civil Procedure that are necessary to obtain evidence in support of their claims. Plaintiffs cite no authority in support of their contention that lack of discovery equates with futility. Since the UAW internal appeals process can provide the monetary relief that Plaintiffs seek, that procedure is not futile.

Finally, Plaintiffs have presented no evidence that UAW officials were hostile towards them. The Court concludes that none of the factors enunciated in Clayton are present here to excuse Plaintiffs from exhausting their internal union remedies. Therefore, the Court will grant summary judgment to Defendants with regard to Plaintiffs' claims.

Having concluded that Plaintiffs failed to exhaust their internal union appeals, the Court does not reach the issue of whether the Union breached its duty of fair representation.

## IV. ORDER

**NOW, THEREFORE, IT IS ORDERED** that "Defendants' Motion for Summary Judgment," Doc. 90, is **GRANTED**.

The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

Signed: June 14, 2013

_____
David S. Cayer
United States Magistrate Judge

